UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JENNIFER JASON, et al.,

           Plaintiffs,

    v.

UNITE HERE,

           Defendant.

CASE NO. C05-820JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on a Fed. R. Civ. P. 12(b) motion (Dkt. # 21) from Defendant UNITE HERE to dismiss this action for lack of personal jurisdiction or for lack of venue, or alternatively to transfer this action to the United States District Court for the Southern District of New York. The court has considered the parties' briefing and accompanying declarations, and has heard oral argument. For the reasons stated below, the court resolves several jurisdictional questions, but reserves its final ruling pending supplemental briefing from the parties.

## II. BACKGROUND

UNITE HERE is an unincorporated international labor organization that represents workers and unions in the United States and Canada. UNITE HERE's headquarters are in

ORDER – 1

New York City. It maintains branch offices in several locations. Although UNITE HERE has no offices in Washington, there are six UNITE HERE local unions ("locals") in the state. The locals represent more than 3800 Washington workers. Each local maintains its own leadership and operates on its own behalf, but also has a robust relationship with UNITE HERE. UNITE HERE's constitution, which trumps the constitution or rules of any local, refers to each local as an "affiliate," and imposes numerous regulations on each local's operations. The purpose of each local is to "carry out the objectives, policies, and decisions of UNITE HERE." To effectuate these purposes, and to carry out its mission to "unite all workers within its jurisdiction," UNITE HERE corresponds regularly with the Washington locals, provides informational material including videos and newsletters, and provides legal advice and training. One of the Washington locals has operated under UNITE HERE's receivership since 2002. Richard Sawyer, a UNITE HERE vice-president and Washington resident, is the trustee in charge of this local. UNITE HERE has only one other Washington employee, an apprentice boycott coordinator working under the supervision of one of the locals. UNITE HERE also distributes a magazine to each worker who belongs to a Washington local. UNITE HERE has not attempted to organize workers in Washington since at least 2002.

    The only connection between the Plaintiffs and Washington is that two of them, Jennifer Jason and Andrew Gibert, moved to Washington while they were still working for UNITE HERE.[1] Each of the Plaintiffs worked for UNITE HERE as a field organizer. None of the Plaintiffs belong to a Washington local. None of the Plaintiffs provided services for a Washington local. None of the Plaintiffs organized or attempted to

---

[1] Because the other two Plaintiffs, Trenette Savage and Martha Blackmon, are residents of other states with no ties to Washington, this order discusses only Plaintiffs Jason and Gibert.

ORDER – 2

organize Washington workers. Even while living in Washington, Plaintiffs continued to direct their services for UNITE HERE to workers outside the state. Although Plaintiffs claim that UNITE HERE did not compensate them for overtime work, their counsel admitted in oral argument that there is no evidence that they worked unpaid overtime in Washington or as Washington residents.

Plaintiffs brought this action under the Fair Labor Standards Act ("FLSA") to recover unpaid overtime premiums from their time as UNITE HERE employees. UNITE HERE claims that it has no contacts with Washington sufficient to support this court's exercise of jurisdiction over it. UNITE HERE seeks to either dismiss this action for lack of personal jurisdiction or improper venue, or in the alternative to transfer this action to the Southern District of New York.

### III. ANALYSIS

Plaintiffs must make a prima facie showing of personal jurisdiction to survive UNITE HERE's motion to dismiss. Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1128-29 (9th Cir. 2003). Plaintiffs must provide evidence that, if believed, would support the court's exercise of jurisdiction over UNITE HERE. Id. at 1129. The court need not accept Plaintiffs' bare allegations if UNITE HERE controverts them with evidence. See AT&T Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996). If both parties provide evidence supporting different versions of a fact, however, the court must resolve competing inferences in the Plaintiffs' favor. Harris Rutsky, 328 F.3d at 1129.[2]

---

[2] A preponderance of evidence standard applies where the court holds an evidentiary hearing to address personal jurisdiction. Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1284-85 (9th Cir. 1977). Neither Plaintiffs nor UNITE HERE requested an evidentiary hearing.

ORDER – 3

Where no applicable federal statute addresses the issue, a court's personal jurisdiction analysis begins with the "long-arm" statute of the state in which the court sits. Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1123 (9th Cir. 2002). Washington's long-arm statute extends the court's personal jurisdiction to the broadest reach that the United States Constitution permits. Shute v. Carnival Cruise Lines, 783 P.2d 78, 82 (Wash. 1989). The court must thus determine whether exercising jurisdiction over UNITE HERE comports with federal due process. Glencore Grain, 284 F.3d at 1123.

A court can exercise its power over a non-resident defendant (absent the defendant's consent) only if it has specific or general jurisdiction. Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). Where a defendant has "substantial" or "continuous and systematic" contacts with the forum state, it is subject to general jurisdiction, and can be haled into court on any action, even one unrelated to its contacts. Id. If a defendant is not subject to general jurisdiction, it may be subject to specific jurisdiction if the action upon which it is sued arises from its contacts within the forum state. Id. In either case, the critical factor in determining personal jurisdiction is the extent of the defendant's contacts with the forum state. The court therefore must examine UNITE HERE's contacts with Washington to determine if they support the exercise of either general or specific jurisdiction.

**A.    Specific Jurisdiction**

The Ninth Circuit applies a three-part test to determine specific jurisdiction. First, the nonresident defendant must "do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws[.]" Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977).

ORDER – 4

Second, the plaintiff's claim must "arise[] out of or result[] from the defendant's forum-related activities . . . ." Id. Third, the "[e]xercise of jurisdiction must be reasonable." Id. If the plaintiff meets his burden on the first two parts of the test, the burden shifts to the defendant to satisfy the third part by presenting a "compelling case" that the exercise of jurisdiction is unreasonable. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2002) (citation omitted).

Plaintiffs have not established a prima facie case of specific jurisdiction because there is no evidence that any Plaintiff has a claim that arises from any act with a connection to Washington. To establish that a claim "arises out of forum-related activities," a court must determine "whether [a plaintiff's] claims would have arisen but for [a defendant's] contacts with" the forum state. Doe v. Unocal Corp., 248 F.3d 915, 924 (9th Cir. 2001). As already noted, Plaintiffs' counsel admitted during oral argument that there is no evidence that any Plaintiff worked uncompensated overtime in Washington or as a Washington resident. Plaintiffs' FLSA claims, therefore, would have arisen even if the Plaintiffs had chosen to relocate to Alaska or Florida instead of moving to Washington. See Schwarzenegger, 374 F.3d at 799 (noting that advertisements viewable in forum state were also viewable "from any Internet cafe in Istanbul, Bangkok, or anywhere else in the world"). Absent allegations or evidence that some aspect of Plaintiffs' FLSA claim has some connection to Washington, the court has no basis to exercise specific jurisdiction.[3]

---

[3] At oral argument, Plaintiffs claimed that UNITE HERE had purposefully availed itself of Washington privileges when it became aware that Plaintiffs had moved to Washington and continued to employ them. Courts have found purposeful availment when a defendant maintains an ongoing relationship with a plaintiff who moves to the forum in the midst of the relationship *and* the plaintiff's claim arises in part out of the ongoing relationship. E.g., T.M. Hylwa, M.D., Inc. v. Palka, 823 F.2d 310, 314-15 (9th Cir. 1987). Plaintiffs' relationship with UNITE HERE is different, because no part of their claim arises from their tenure as

ORDER – 5

To avoid the application of the "but for" test, Plaintiffs misplace reliance on Ochoa v. J.B. Martin & Sons Farms, Inc., 287 F.3d 1182 (9th Cir. 2002). In Ochoa, the court held that a federal court in Arizona had specific jurisdiction over a New York company that employed Arizona residents for work in New York. The Ochoa plaintiffs, who undisputedly worked for the defendant only in New York, sued the defendant under Arizona law for improper housing and breach of contract. Id. at 1187. In Ochoa, however, the New York defendant used an agent in Arizona to recruit the workers for employment in New York. Id. at 1192 (finding an agency relationship). Thus, although the Ochoa court never specifically addressed the issue, the plaintiff's employment-based claims would never have arisen but for the New York defendant's recruitment activities in Arizona. The instant case is easily distinguishable, as there is no allegation that UNITE HERE recruited Plaintiffs in Washington, or otherwise engaged in Washington-related conduct from which their claims arose.

Finally, Plaintiffs suggest that the court can excuse their failure to meet the "but for" test by adopting the "flexible approach" that the Ochoa court noted in dicta. 287 F.3d at 1188 n.2 (citations omitted). On its face, the "flexible approach" would permit a court to accept a "lesser showing of minimum contacts," id., but there is no indication that it would permit a court to ignore the "but for" test. Id. Plaintiffs cite no authority, and the court is aware of none, in which the "flexible approach" has rescued a plaintiff claiming specific jurisdiction despite his failure to show that his claim arose from the defendant's forum-related activities. Plaintiffs' failure to show that their claim arose from UNITE HERE's actions in Washington is fatal to their specific jurisdiction claim.

---

Washington employees. If, upon learning that Plaintiffs had moved to Washington, UNITE HERE had fired the Plaintiffs, it would have made no difference to this action.

ORDER – 6

**B.      General Jurisdiction**

With no basis for specific jurisdiction, Plaintiffs must make a prima facie case for general jurisdiction over UNITE HERE.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 & n.9 (1984).  A plaintiff asserting general jurisdiction must meet an "exacting standard."  Schwarzenegger, 374 F.3d at 801.  A defendant is not subject to general jurisdiction unless its contacts are so "substantial or continuous and systematic" that they "approximate physical presence" in the forum state.  Bancroft & Masters, 223 F.3d at 1086.  The Ninth Circuit "regularly [has] declined to find general jurisdiction even where the [defendant's] contacts were quite extensive."  Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 851 n.3 (9th Cir. 1993).[4]

General jurisdiction requires a much more substantial connection to the forum than does specific jurisdiction.  Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995).  A court must consider "all of the defendant's activities that impact the state, including whether the defendant makes sales, solicits or engages in business, serves the state's markets, designates an agent for service of process, holds a license, has employees, or is

---

[4]The court's own review of Ninth Circuit and Supreme Court cases reveals that general jurisdiction is rarely available, even with substantial contacts in the forum.  E.g., Shute v. Carnival Cruise Lines, 897 F.2d 377, 381 (9th Cir. 1990) (finding no general jurisdiction despite continuous sales to Washington residents, ongoing advertising in Washington, and ongoing business relationships with Washington agents), rev'd on other grounds, 499 U.S. 585 (1991); Helicopteros Nacionales, 466 U.S. at 411, 417 (finding no general jurisdiction despite purchase of more than 80% of helicopter fleet, parts, and accessories from forum state over an eight-year period, plus numerous related business trips to forum); Bancroft & Masters, 223 F.3d at 1086 (no general jurisdiction despite continuous business relationship with two television networks and a handful of California vendors).  By contrast, in the sole Supreme Court case in which a plaintiff asserting personal jurisdiction succeeded, the Court found that a corporation doing business in the Phillipines could be subject to general jurisdiction in Ohio because its director, forced out of the country during the second world war, had directed all activities of the corporation from Ohio.  Perkins v. Benguet Mining Co., 342 U.S. 437, 447-49 (1952).

ORDER – 7

incorporated there." Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1478 (9th Cir. 1986). A mere showing that a defendant has systematic business contacts with the forum, however, is insufficient. Bancroft & Masters, 223 F.3d at 1086. A plaintiff must show that the defendant's activities transcend doing business "with" the forum state such that it is fair to say that it is actually doing business "in" the forum state. Id.; see also Helicopteros Nacionales, 466 U.S. at 418 ("[M]ere purchases, even if occurring at regular intervals, are not enough" to support general jurisdiction.). It is not enough to show that the defendant has "stepped through the door" of the forum through ongoing business contacts, the plaintiff must show that the defendant "has sat down and made itself at home." Glencore Grain, 284 F.3d at 1125.

   1.   **General Jurisdiction Based on UNITE HERE's Contacts Alone**

The court begins its general juridiction analysis by examining UNITE HERE's contacts with Washington. Taking uncontroverted allegations and inferences from evidence in Plaintiffs' favor, UNITE HERE receives per capita dues from its Washington locals. It does not, however, have any involvement with recruiting Washington workers into the locals, and has conducted no organizing campaigns in Washington for many years. UNITE HERE employs only two people in the state, an officer and a "boycott coordinator apprentice." The officer serves as the trustee in receivership of one of the locals. It communicates to members of its Washington locals by sending them national publications. It also has ongoing communications with the Washington locals, and, taking the evidence in the light most favorable to Plaintiffs, UNITE HERE exerts considerable influence on its locals' operations.

The court must place UNITE HERE's contacts with Washington in perspective. UNITE HERE clearly benefits from its Washington members through per capita dues. It does not, however, solicit those benefits. The locals are in charge of membership, dues

ORDER – 8

collection, and passing per capita dues to UNITE HERE. UNITE HERE provides information to its Washington members, but appears to have no interactive contact with any of them. UNITE HERE pays no Washington taxes, is not licensed to do business in Washington, and has no agent for service of process here. Although two UNITE HERE employees are present in Washington, there is only minimal evidence that they act to avail UNITE HERE of the benefits of doing business in Washington. Althought a UNITE HERE officer acts as the trustee of a local, there is no evidence that UNITE HERE exerts any control over his trusteeship, and thus no evidence that the trustee is acting on behalf of UNITE HERE, rather than the local. See Doe, 248 F.3d at 926 ("[O]fficers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately") (citation omitted). The presence of the two employees is of minimal significance in the general jurisdiction analysis. See Congoleum Corp. v. DLW Aktiengesellschaft, 729 F.2d 1240, 1242 (9th Cir. 1984) (noting that even the presence of a "substantial sales force" in the forum state is insufficient to confer general jurisdiction).

With the exception of passive communications with its members and the presence of two employees, UNITE HERE's contacts with Washington consist entirely of its interactions with the Washington locals. Even crediting Plaintiffs' contention that these contacts are extensive, this shows only that UNITE HERE does business with a Washington entity, not that it does business in Washington.[5]

---

[5] Although the court focuses on the Ninth Circuit and Supreme Court authority that binds it, it notes that a Maryland appeals court declined to find general jurisdiction over a national union based on the in-state presence of two local unions. Lewron Television, Inc. v. Int'l Alliance of Theatrical Stage Employees, 378 A.2d 728, 731, 735 (Md. Ct. Spec. App. 1977). Lewron is remarkable for at least two reasons. First, the control structure between the international union and its locals was similar to the structure in the instant case. See id. at 731-33. Second, it is the only case that either party cites in which the plaintiff argued for personal jurisdiction even though "none of the acts . . . upon which plaintiff's claims [were] based was committed in [the forum state]." Id. at 732.

ORDER – 9

Plaintiffs place great emphasis on a clause in the UNITE HERE constitution that makes UNITE HERE the owner of all of its locals' property. This fact has little significance on its own. Although property ownership in a state is a contact relevant to any jurisdictional analysis, it is far from dispositive. Shaffer v. Heitner, 433 U.S. 186, 212 (1977). Moreover, Plaintiffs offer no evidence to controvert UNITE HERE's evidence that the locals exercise control over all Washington property, regardless of its legal ownership.

The court has considered Steir v. Girl Scouts of the USA, 218 F. Supp. 2d 58 (D.N.H. 2002), the only case that Plaintiffs cite in which a court asserted general jurisdiction.[6] In Steir, the New Hampshire plaintiff sued both her regional Girl Scout council and the national Girl Scout organization on state and federal claims that the Scouts had not accommodated her disability. Id. at 60. The court agrees that the relationship between the regional council and national organization in Steir was similar to the relationship between the Washington locals and UNITE HERE. Id. at 63-64 (noting that national organization received dues from Girl Scouts in New Hampshire, trained local and regional leaders, insured local troops, and chartered the regional counsel). The Steir court, however, considered a type of contact not present in this action – the national organization received royalties from the New Hampshire sale of its famous "Girl Scout cookies." Id. at 63.

---

[6]Plaintiffs incorrectly claim that the courts in Bennett v. J.C. Penney, 603 F. Supp. 1186 (W.D. Mich. 1985), and Anderson v. Dassault Aviation, 361 F.3d 449 (8th Cir. 2004), found general jurisdiction. Neither court expressly addressed general or specific jurisdiction. The Bennett court expressly found that plaintiff's claim arose in part from the defendant's activities in the forum state. 603 F. Supp. at 1189. In Anderson, the plaintiff's airborne personal injury claim arose in part from the defendant's manufacture of jet planes in the forum state through its subsidiary. 361 F.3d at 450-51, 454-55.

ORDER – 10

One critical difference between this instant case and Steir is the absence of additional factors showing that jurisdiction is reasonable. The plaintiff in Steir based her federal and state law claims on allegations the national organization had participated (by influencing the regional council's policy) in discriminating against her as a New Hampshire resident. Id. at 65-66. Those facts gave New Hampshire a compelling interest in the litigation that is notably absent in this case. Here, Plaintiffs have no state law claims, and accrued their FLSA claims before moving to Washington. In sharp contrast to the plaintiff in Steir, the Plaintiffs brought their lawsuit from another forum to Washington, and can point to no jurisdictional contact that has any relation to this action.

After considering the cumulative effect of each contact described above, along with guidance from Ninth Circuit and Supreme Court authority, the court concludes that UNITE HERE's contacts are insufficient to support general jurisdiction. UNITE HERE had ample reason to expect that it might be haled into court on causes of action related to its interactions with the Washington locals, and perhaps even on causes of action related to the activities of its locals. Plaintiffs have not met their burden, however, to produce evidence from which the court could conclude that UNITE HERE could reasonably anticipate being haled into court in a suit that has no relation to its activities in Washington.[7]

---

[7] An oft-repeated mantra for the exercise of personal jurisdiction is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). In assessing general jurisdiction, it seems appropriate to inquire whether the defendant's contact with the forum is so extensive that he should reasonably anticipate being haled into court on actions that have no relation to his conduct there. E.g., Doe v. Nat'l Med. Servs., 974 F.2d 143, 146 (10th Cir. 1992); Sandstrom v. Chemlawn Corp., 727 F. Supp. 676, 683 (D. Me. 1989); Luna v. Compania Panamena De Aviacion, S.A., 851 F. Supp. 826, 834 (S.D. Tex. 1994); Sullivan v. Tagliabue, 785 F. Supp. 1076, 1081 (D.R.I. 1992).

ORDER – 11

**2.     General Jurisdiction Based on the Imputed Contacts of the Washington Locals**

Although Plaintiffs have not shown that UNITE HERE has "sat down and made itself at home" in Washington, it is clear that the six Washington locals have. The question is whether the court can impute the locals' contacts in Washington to UNITE HERE. In decisions addressing whether it is appropriate to impute the contacts of an in-forum subsidiary to its out-of-forum corporate parent, the Ninth Circuit has set forth two different standards: the "alter ego" test and the "agency" test. Doe, 248 F.3d at 926.

Considering the imputation of the locals' Washington contacts to UNITE HERE raises many questions that the parties have not answered. Where there appears to be no binding authority[8] addressing the imputation of a local's contacts to a national union, is it appropriate to treat the relationship as one between a corporate parent and its subsidiary? If the answer is "yes," should the court impute the Washington locals' activities to UNITE HERE under either the "alter ego" or "agency" tests? Under either test, should the court merely impute the locals' actions in Washington, or should it also impute the locals' physical presence in Washington to UNITE HERE?

The court declines to answer these questions without the parties' input, and thus requires them to submit supplemental briefing. The court offers a few guidelines. First, assuming that the "alter ego" test applies, the court finds it very unlikely that Plaintiffs can satisfy it. A subsidiary is a parent's "alter ego" only when there is "such unity of interest and ownership that the separate personalities of [the two entities] no longer exist" and "that failure to disregard [their separate identities] would result in fraud or injustice."

---

[8]In Lewron, discussed at supra note 5, the court determined that the close relationship between the international union and its in-forum local did not "render the local a mere arm of the International, whereby the local's activities and those of the International may properly be considered one and the same." 378 A.2d at 735.

ORDER – 12

Doe, 248 F.3d at 926 (citing AT&T, 94 F.3d at 591). On the evidence before the court, Plaintiffs fall well short of establishing either prong of the "alter ego" test, although they may argue otherwise. See Harris Rutsky, 328 F.3d at 1135 (noting that even 100% ownership of a subsidiary and identity of board members and officers is insufficient to meet alter ego test). Plaintiffs may have a better argument under the "agency" test. The court notes, however, that it is aware of only one case in which the Ninth Circuit has considered this test in a general jurisdictional analysis. Id. at 925, 928-31. In every other instance, the plaintiff's claim against the parent corporation arose in part from the actions of the in-forum "agent." E.g., Chan v. Society Expeditions, Inc., 39 F.3d 1398 (9th Cir. 1994); Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406 (9th Cir. 1977). Finally, the court notes that an unsettled debate over the extent to which the degree of control that the parent exercises over its subsidiary is relevant in the "agency" test may have a substantial impact on this action. Compare Modesto City Schs. v. Riso Kagaku Corp., 157 F. Supp. 2d 1128, 1134 (E.D. Cal. 2001) (holding that control is relevant, but "is not the sina qua non of the general agency test") with Donatelli v. Nat'l Hockey League, 893 F.2d 459 (1st Cir. 1990) (emphasizing control in determining whether to attribute the contacts of an in-forum member to an out-of-forum unincorporated organization"); see also Lewron, 378 A.2d at 734-35 (focusing on international union's control over its locals in declining general jurisdiction).

## IV.  CONCLUSION

In this order, the court holds that Plaintiffs have failed to make a prima facie case for the exercise of specific jurisdiction over UNITE HERE. They have also failed to make a prima facie case for the exercise of general jurisdiction based solely on UNITE HERE's Washington contacts. The court reserves ruling, however, on whether Plaintiffs can establish general jurisdiction by imputing the contacts of the Washington locals to

ORDER – 13

UNITE HERE.[9]  Plaintiffs shall file a supplemental brief of no more than 10 pages addressing that issue, no later than December 9, 2005.  UNITE HERE may file an opposition brief of no more than 10 pages, no later than December 16, 2005.[10]  The court will not accept reply briefs.  In addition to addressing the questions the court raised regarding the imputation of contacts, the parties shall also state whether, in the event the court finds that it has no personal jurisdiction, it would be appropriate to transfer this action to the Southern District of New York (or another district) under 28 U.S.C. § 1631. See Gray & Co. v. Firstenberg Machinery Co., 913 F.2d 758, 761-62 (9th Cir. 1990).

The clerk shall renote Defendant's motion (Dkt. # 21) to December 16, 2005.

Dated this 2nd day of December, 2005.

                                               s/James L. Robart

                                               _____
                                               JAMES L. ROBART
                                               United States District Judge

---

[9]The court also reserves ruling on UNITE HERE's request for transfer of venue.  The court's preliminary ruling is that, assuming it had personal jurisdiction, it would decline to transfer this action under 28 U.S.C. § 1404(a).  If the court ultimately rules that it lacks personal jurisdiction over UNITE HERE, it need not address venue.  The parties shall not address venue in their supplemental briefs.

[10]The court imposes a compressed briefing schedule because both parties have indicated their interest in speeding the resolution of this issue.  If the parties would prefer a different schedule, they may stipulate to one and notify the court.

ORDER – 14